UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
At Chattanooga

UNITED STATES OF AMERICA,

    Plaintiff,

v.

    No. 1:11-cr-72
    Judge Collier/Lee

JEFFREY ALLEN ROTHWELL,

    Defendant.

## DEFENDANT'S RESPONSE AND SUPPLEMENTAL SENTENCING MEMORANDUM

Defendant Jeffrey Allen Rothwell, through undersigned counsel, hereby submits the following information in response to the Government's Sentencing Memorandum and in support of his previous motion for this Honorable Court to impose a sentence below the advisory guideline range in this case. Specifically, Mr. Rothwell asks for a downward departure or variance which would result in the imposition of a sentence of probation, or in the alternative, a nominal period of incarceration to be followed by a term of supervised release.

**Facts**

Mr. Rothwell does not dispute the facts of this case as set out by the plea agreement and Government's Sentencing Memorandum. As will be discussed in more detail, there are specific and uncontested facts in Mr. Rothwell's case that distinguish his offense from that of every case examined by the Government in its sentencing memorandum, including the most recent case of *United States v. Bistline*, – F.3d –, 2012 WL 34265 (6th Cir., Jan. 9, 2012).

Mr. Rothwell's name was discovered on a customer list of individuals who had previously ordered movies from a commercial movie distributor in Hollywood, California. The owner of the

company sold movies which did not constitute child pornography, a fact also determined by a federal district court. See *United States v. Eisenlohr*, W.D. Va. No. 6:08-cr-34, R. 49. However, individuals who had purchased some of those DVD's were suspected of attempting to acquire movies which were actual child pornography. Mr. Rothwell's name was taken from the customer list by agents for the government and he was sent a fake flyer advertising DVDs with descriptions indicating the content was child pornography. Mr. Rothwell ordered eight such DVDs and three additional "preview reels". The agents made a controlled delivery of these DVDs, which were accepted for Mr. Rothwell's by his mom (although refusing to sign for them for religious reasons). Mr. Rothwell arrived home after the delivery and was intercepted by agents who later searched his home.

A search of Mr. Rothwell's home revealed adult pornography, as well as DVDs similar in content to those in the Eisenlohr prosecution that were determined not to constitute child pornography. Mr. Rothwell himself admitted ordering the DVDs from the fake flyer, as well as "naturalist" videos, stating that he "figered (sic) that they as not possible elagle (sic) bacause (sic) they was threw (sic) the mail". There are no allegations that Mr. Rothwell disposed of any videos or evidence prior to the search of his home. The DVDs were never actually possessed or viewed by Mr. Rothwell. Furthermore, this case did not involve the use of a computer in any form. There was no file sharing or massive repeated downloading of images hundreds of times over. The image count in this case is very small - based on the DVDs delivered in the controlled delivery. There are no "known victims" like in other child pornography cases, no victim impact letters or restitution. No videos with images of violence of sado-masochism were ordered.

Equally as important as the factual distinctions of the offense conduct in this case are the personal characteristics of Mr. Rothwell. It is undisputed by the government, probation officers and

2

case agents that Mr. Rothwell has very apparent mental limitations. IQ testing confirms this assessment. An IQ test of Mr. Rothwell revealed a full scale IQ score of 77, indicating that his overall functioning is relegated to the Borderline Range. What may be of even more importance is that not only does he have cognitive limitations, but his responses also displayed a limited degree of social awareness and competence. Because Mr. Rothwell has lived in the safety of his parents home his entire life and his employment has only been as a laborer on his parents' farm, he has not been exposed to the same degree of socialization as the average person. In essence and very important in this case, Mr. Rothwell lives in a world similar to that of a trusting child. This would cause Mr. Rothwell to be a frequent victim of abuse in a prison setting, likely requiring extremely onerous conditions of incarceration, such as isolation.

**Bistline**

In the case at hand, Mr. Rothwell has requested a departure of his advisory guideline range under U.S.S.G. §§ 5K2.13, Diminished Capacity and 5H1.3, Mental and Emotional Condition, and/or a variance under the same facts based on principles of sentencing addressed by § 3553. Because of the unusual characteristics of his offense conduct, reduced mental capacity, and ability for the community to be both protected and deterred without incarceration, a sentence of probation is appropriate and reasonable in this particular case. Mr. Rothwell did not address policy disagreements with the § 2G2.1 guideline in his initial memorandum.

The Court has asked the parties to address Mr. Rothwell's sentencing requests in light of the issuance of *United States v. Bistline*, – F.3d –, 2012 WL 34265 (6th Cir., Jan. 9, 2012), which was decided subsequent to the filing of the parties' sentencing memorandums. Much of the *Bistline* opinion concerns scrutinizing the district court's reasons for rejecting the § 2G2.2 guideline itself,

3

calling it the "keystone of the district court's reasoning". *Bistline*, at 2.

In *Bistline*, the judge varied from a 63-78 month advisory guideline range to a sentence of a single night of confinement and ten years of supervised release based on 1) a policy disagreement with § 2G2.2, citing the fact that it was not developed by the Commission based on empirical data or national experience, and contrasting the punishment it recommended with the punishment recommended by guidelines applicable to more serious crimes; and 2) the defendant's age (67), health (two strokes), and family circumstances ("putative" need to care for his wife).

The panel held that (1) *all* policy disagreements are subject to "closer review," (2) disagreements with guidelines "bristling with" congressional directives are subject to *the very closest review*, and (3) policy statements disapproving of individualized circumstances for purposes of "departure" *must* be considered when the defendant moves for a *variance* (and seem to render a *variance* based on disfavored factors unreasonable). However, two of the factors *Bistline* assumed were disapproved by the Commission, age and health, are now deemed "may be relevant," rather than "not ordinarily relevant."

*Bistline* reasons that guidelines driven by congressional directives are subject to the very closest review is that it best comports with Separation of Powers for Congress to treat the Commission like a judge would his law clerk or a Senator would his staff. When the Commission issues guidelines without congressional directives, it has to act on the basis of empirical data and national experience, but Congress is free to use the Commission as a conduit, and when it does, judges face a "formidable task."

The *Bistline* panel held, under "closer review," that the reasons the judge gave demonstrating that the Commission did not act in its characteristic institutional role (the Commission acted

4

pursuant to congressional directives rather than its capacity to base its determinations on empirical evidence and national experience), were unreasonable as a matter of law. The opinion (a) held that in order to disagree with a guideline driven by congressional directives (which includes about 80 guidelines), the judge must refute *Congress's* reasons for the directives; and (b) found that Congress's reasons for these directives were retribution and deterrence (based on a directive in the PROTECT Act to "ensure that the guidelines are adequate to deter and punish"); that child pornography possession is a serious crime, and that high sentences are needed to promote individual and general deterrence.

The government agrees that despite the finding that Bistline's sentence was substantively unreasonable, *Bistline* should not be read to mandate a particular type of sentence pursuant to *Gall v. United States*, 552 U.S. 38, 51 (2007). In *Bistline*, the Sixth Circuit did not hold that variances are not allowed, but that there was insufficient reasoning *on the record* in that case to justify the variance given. (*emphasis added*). The Supreme Court has made clear that the Guidelines are not mandatory and the sentencing court should not presume a sentence within the Guidelines to be reasonable. *See Kimbrough*, 128 S. Ct. at 574-75; *Gall v. United States*, 128 S. Ct. 586, 596 (2007); *Nelson v. United States*, 129 S. Ct. 890 (2009).

**Consideration of Bistline and Mr. Rothwell's Case**

As the government has stated, a number of things can be taken from the *Bistline* case and other child pornography downward departure or variance cases. Of particular note is that a court must explain the reasons behind a downward departure more than just a recitation of the factors. Further, the court should address how the sentence imposed addresses each of the §3553 factors. The ultimate question in the sentencing of any defendant is whether the sentence is sufficient but not

5

greater than necessary to comply with the purposes set forth by Congress in 18 U.S.C. §3553(a). Judges must make an individualized assessment based of the facts presented in each case.

**Seriousness of Offense**

In addition to policy arguments, *Bistline* highlighted that among the § 3553 considerations are the seriousness of child pornography offenses and the inappropriateness of disconnecting the harm done to the child victim in child pornography consumer cases. Of particular concern to this Court as well as the panel in *Bistline,* is how a sentence of one day of incarceration, or as in Mr. Rothwell's case the request for a sentence of probation, can sufficiently reflect the seriousness of the offense of possession of child pornography (or in this case the attempted possession of child pornography).

First, as *Gall* discusses, although custodial sentences are qualitatively more severe than probationary sentences of equivalent terms, offenders on probation are nonetheless subject to conditions that substantially restrict their liberty. Inherent in the very nature of probation is that probationers "'do not enjoy the absolute liberty to which every citizen is entitled'". Probationers may not leave the judicial district, move, or change jobs without notifying, and in some cases receiving permission from, their probation officer or the court. In addition to standard conditions set out in U.S.S.G. § 5B1.3, most probationers are also subject to individual "special conditions". *Gall*, at 595-596. Although Congress was the relevant actor in respect to amendments to the §2G2.2 guidelines, they have not changed the statutory sentencing range for possession of child pornography which remains at zero to ten years of imprisonment. There is no mandatory minimum statutory period of incarceration for the offense of possession of child pornography and thus logic dictates that there must be situations in which a period of incarceration is inappropriate for an offender. See

*United States v. Husein*, 478 F.3d 318, 332 (6th Cir. 2007).  Probation is a punishment, and conditions can be placed on Mr. Rothwell to restrict his mobility and associations.

Furthermore, as set out in his previous Motion for Downward Departure, or in the Alternative, Non-guideline Sentence, the court must do a careful job when balancing its consideration of the seriousness of the offense.  A sentence that is excessive in light of the seriousness of the offense will tend to promote disrespect for the law and provide unjust punishment. The theory of "retribution" not only considers Mr. Rothwell's past actions, but also his degree of blameworthiness for his actions.  The degree of blameworthiness considers both the nature and seriousness of the harm to the public, but also the offender's degree of culpability in committing the crime, in particular his motives, role in the offense, and any mental illness or other diminished capacity.

It is certainly not in dispute that attempted possession of child pornography is a serious crime, but the inquiry into that portion of the nature of the offense is not the only consideration in a just punishment.  Mr. Rothwell's intent, motives and diminished capacity are to be considered as well. As stated earlier, Mr. Rothwell was previously evaluated in order to determine his intellectual functioning. He scored a Full Scale IQ of 77, in the Borderline Range, but also observations were made regarding his social awareness and competence.  His lowest Achievement test result scored in the 3rd grade equivalent with his highest in the 8th.  This would normally be an age range of approximately 9 to 14 years of age. He has been socially isolated his entire life and his decision-making in this case reflects emotional or intellectual development more appropriate to someone much younger than his years.  His family reports his behavior to be childlike and naive.  Mr. Rothwell's isolated community environment, and his family's religious cultural differences and

7

Case 1:11-cr-00072-CLC-SKL   Document 26   Filed 02/02/12   Page 7 of 12   PageID #: 124

behaviors are additional factors to consider as reasons that affected his decision making. Therefore, Mr. Rothwell is factually distinguishable from the defendant in *Bistline* in his personal characteristics and in his degree of culpability. Although the defendant in *Bistline* was older, no observations were made concerning his intellect and his motivations were considered to be affirmative, deliberate and repeated, as he downloaded images hundreds of times over.

These factors concerning Mr. Rothwell's intellect and social limitations were not present in any other case reviewed by the government in their memorandum aside from *United States v. Camiscione*, 207 Fed. Appx. 631 (6th Cir. 2006). However, *Camiscione* is factually distinguishable from Mr. Rothwell's in that Camiscione was diagnosed with a myriad of psychological and behavioral disorders, unlike Mr. Rothwell's untreatable organic impairments. Also, Camiscione's case involved the use of a computer.

As noted earlier, Mr. Rothwell's case, in addition to being distinguishable because of his mental impairment, is less egregious and is distinguishable factually from almost every other case summarized by the government besides *Bistline*. In *United States v. Christman*, 607 F.3d 1110 (6th Cir. 2010), Christman used a computer and shared images on an "international scale". In *United States v. Stall,* 581 F.3d 276 (6th Cir. 2009), Stall used peer-to-peer sharing on his computer for several years. The factual distinctions become important when addressing the inappropriateness of disconnecting the harm done to the child victim in child pornography consumer cases. The egregiousness of the offense directly effects the number of child victims.

**Other 18 U.S.C. § 3553 Factors**

The district court in *Bistline* discussed the remaining § 3553 factors in less detail. It did not address general deterrence at all, stating that they believed that it will have little if anything to do

8

with this particular case. The Sixth Circuit disagreed, quoting *Carmiscione*, that "deterrence is crucial in the child pornography context." *Bistline*, at 8, quoting *Carmiscione* at 834. General deterrence is the second of four factors which *shall* be considered when imposing a sentence. Mr. Rothwell submits that a sentence of probation in *this particular case* is adequate to deter both himself and the general public. There is still a felony conviction, connected loss of rights and limitations on liberty.

As Mr. Rothwell has stated, his case is atypical and consideration should indeed be given to his mental impairments. A lengthy term of imprisonment may be appropriate in a possession of child pornography case with a defendant of unimpaired mental capabilities and who is computer savvy. However, this is not the circumstance of this case. Similarly situated defendants will learn from Mr. Rothwell's punishment that they will be prosecuted, lose their liberty (probation is a loss of liberty), and that they must abide by the strict conditions of the probation office or they will be incarcerated. Undersigned urges this Court to consider that Mr. Rothwell experiences an IQ of 77, an Achievement age approximately equal to that of a 9 to 14 year old and an extremely sheltered and naive life.

In consideration of the "need to avoid unwarranted sentence disparities among defendants similar record who have been found guilty of similar conduct", the Court may look to both *Kimbrough* and information provided by the Sentencing Commission. During fiscal year 2010, 58% of § 2G2.2 defendants (991 of 1,708, a number that included distributors) received sentences *below* the Guideline range. Furthermore, courts gave "pure" variances to below-guideline sentences in 38.9% of cases (664 of 1, 708). Through the first three quarters of 2011, the rate is even higher, with

9

62.2% of defendants receiving a below-guidelines sentence (859 of 1,380).[1]

Finally, the court in *Bistline* discussed the "history and characteristics of the defendant" 18 U.S.C. § 3553(a)(1). The court found that although the district court was entitled to consider Bistline's age, health and circumstances, that they could not justify the sentence imposed in that case, noting that these were all "discouraged factors under the guidelines". The court found that policy statements disapproving of individualized circumstances for purposes of "departure" *must* be considered when the defendant moves for a *variance* (and seem to render a *variance* based on disfavored factors unreasonable).

Mr. Rothwell submits that the appropriate way to analyze mitigating factors is laid out in *United States v. Pepper,* 131 S. Ct. 1229, 1242-43 (2011), and *Gall* at 53-60. The question then becomes whether the individualized facts are relevant to the purposes of sentencing, not whether a policy statement allows, discourages, or prohibits "departure" on the basis of such facts. In Mr. Rothwell's case, unlike *Bistline*, the factors he relies on for a downward departure are not disfavored. Mr. Rothwell has requested that the Court consider a downward departure under U.S.S.G. § 5H1.3. This section states in part that "mental and emotional conditions may be relevant in determining whether a departure is warranted, if such conditions, individually or in combination with other offender characteristics, are present to an unusual degree and distinguish the case from the typical cases covered by the guidelines." In addition, he has requested the Court to consider § 5K2.13,

---

[1] See, U.S. Sentencing Commission, U.S. Sentencing Commission's 2010 Sourcebook of Federal Sentencing Statistics, tbl.28, available at
http://www.ussc.gov/Data_and_Statistics/Annual_Reports_and_Sourcebooks/2010/SBTOC10.htm;
U.S.Sentencing Commission, Third Quarter FY11 Quarterly Sentencing Update, tbl. 3, available at
http://www.ussc.gov/data_and_statistics/federal_sentencing_statistics/quarterly_Sentencing_Updates/USSC_2011_3rd_Quarter_Report.pdf

10

Diminished Capacity. This section states in part that "a downward departure may be warranted if (1) the defendant committed the offense while suffering from a significantly reduced mental capacity; and (2) the significantly reduced mental capacity contributed substantially to the commission of the offense." The notes to this section further explain that "Significantly reduced mental capacity" means the defendant, although convicted, has a significantly impaired ability to (A) understand the wrongfulness of the behavior comprising the offense or to exercise the power of reason; or (B) control behavior that the defendant knows is wrongful. As is clear in the facts of the offense and Mr. Rothwell's own description of his crime, his lowered IQ, remote and rural upbringing, and social naivete all contributed to his commission of this crime.

Additionally, Mr. Rothwell has many other factors which can be properly considered under § 3553 such has his multiple serious health conditions and necessity on his family's farm.

**Conclusion**

In early 2010, the United States Sentencing Commission surveyed federal judges about the state of the federal guidelines sentencing system. There were only three crimes for which more than 41% of federal judges expressed the conviction that the Guidelines generally produce too harsh a sentence. For those three particular crimes, the dissatisfaction rate was surprisingly high and virtually identical: 70% for possession of crack cocaine, 70% for possession of child pornography, and 69% for receipt of child pornography. District courts continue to express their disapproval of §2G2.2's provisions via their sentencing decisions and written opinions. [2]

Sentencing courts need not adhere to the Guidelines when through policy and calculation they

---

[2] *See* U.S. Sentencing Commission, Results of Survey of Unites States District Judges January 2010 through March 2010 (June 2010), *available at* http://www.ussc.gov/Research/Research_Projects/Surveys/20100608_Judge_Survey.pdf.

11

do not treat offender characteristics properly under § 3553(a). *Rita v. United States*, 551 U.S. 338 (2007); *Gall*, 552 U.S. 38 (2007); *Pepper v. United States*, 131 S. Ct. 1229, 1247 (2011). Congress has made it clear that "[n]o limitation shall be placed on the information concerning the background, character, and conduct of a person convicted of an offense which a court of the United States may receive and consider for the purpose of imposing an appropriate sentence." 18 U.S.C. § 3661. Where a district court properly calculates the guideline range, addresses the factors under § 3553(a), allows parties to present arguments on what the appropriate sentence should be and thoroughly documents the reasoning, appellate courts will uphold the sentence. See *Gall*, 128 S. Ct. at 598; *United States v. Stall*, 581 F.3d 276 (6th Cir. 2009); *United States v. Prisel*, 316 Fed. Appx. 377, 387 (6th Cir. 2008). For a well-grounded number of reasons, Mr. Rothwell should not receive incarceration and should instead be given a sentence of probation.

        Respectfully submitted,

        FEDERAL DEFENDER SERVICES
        OF EASTERN TENNESSEE, INC.

        By: /s/ *Mary Ellen Coleman*
        Mary Ellen Coleman
        Assistant Federal Defender
        707 Georgia Avenue, Suite 203
        Chattanooga, Tennessee 37402
        (423) 756-4349

## Certificate of Service

I HEREBY CERTIFY that on February 2, 2012, a copy of the foregoing was filed electronically. Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt. All other parties will be served by regular U.S. Mail. Parties may access this filing through the Court's electronic filing system.

        /s/ *Mary Ellen Coleman*
        Mary Ellen Coleman
        Assistant Federal Defender